UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CARL JENKINS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:20-cv-604-GMB |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

On December 20, 2018, Plaintiff Carl Jenkins filed an application for a period of disability and disability insurance benefits ("DIB"). His alleged disability onset date is May 1, 2016. Jenkins' application for benefits was denied at the initial administrative level. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on December 12, 2019 and denied Jenkins' claims on January 23, 2020. Jenkins requested a review of the ALJ's decision by the Appeals Council, which declined review on March 9, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of March 9, 2020.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Jenkins' case is now before the court for review pursuant to 42 U.S.C. §§ 405(g). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 23. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be reversed and remanded.

## I. STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted).

---

[2] In general, the legal standards are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

"Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Jenkins bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?

> (5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Jenkins was born on December 26, 1966 and was 52 years old on the date last insured. R. 19, 58, 148. He has a high school education and past relevant work as a manager, adult education teacher, and military science instructor. R. 19, 50, 181–87. His primary complaint is chronic pain in his neck, back, and hips. R. 32–34. In his disability report, Jenkins alleged the following medical conditions: non-Hodgkin's Cutaneous T-Cell Lymphoma, left and right shoulder strain, bilateral arm radiculopathy, medial femorotibial subluxation in the left knee, left and right hip degenerative joint disease, sleep apnea, hypertension, cervical spine strain. R. 167.

Jenkins testified that he experiences constant pain in his neck, back, and hips.

R. 31–34.  Treatment for this pain has included medication, injections, physical therapy, and visits to a chiropractor. R. 34–40.  Jenkins testified that the injections for his back pain gave him some relief, but only for a few weeks. R. 35.  He also received injections for his hip pain that were not effective. R. 39–40.  Although the medication prescribed for his pain gave him some relief, Jenkins could not tolerate the side effects of drowsiness and an inability to function. R. 38.  The injections lowered Jenkins' pain to a five out of ten and the medication lowered his pain to a seven out of ten. R. 37–38.  The relief was temporary. R. 38.

Jenkins testified that he is able to stand up for 25 to 30 minutes before needing to sit down. R. 40.  He tries to walk for at least 20 to 25 minutes each day, and can walk for approximately 30 minutes before needing to sit. R. 40.  He has to lie down during some part of every day to alleviate pain. R. 46.  Jenkins estimated he spends about an hour to an hour and a half lying down each afternoon. R. 46.

Jenkins lives in a house with his wife and performs his own lawn care. R. 42.  He has to wear a back brace and knee brace when he works in the yard and has to take breaks while completing the tasks. R. 46–47.  He helps his wife with the cooking, cleaning, and laundry "from time to time," and also with grocery shopping. R. 42. He is able to care for his own personal needs, but has difficulty putting on his socks and shoes. R. 43, 190.  During a typical day, he spends approximately 45 minutes each morning at a fitness center where he walks on a treadmill and tries to

do some resistance training. R. 43, 44.  He attends online school. R. 43–44.

The ALJ issued her decision on January 23, 2020. R. 11–21.  Under step one of the five-step evaluation process, she found that Jenkins has not engaged in substantial gainful activity from May 1, 2016 through his date late insured of December 31, 2018. R. 13.  The ALJ concluded that Jenkins suffers from the severe impairments of degenerative disc disease, degenerative joint disease, and osteoarthritis.[3]  R. 13–14.  The ALJ noted that these medically determinable impairments cause more than minimal limitations to his ability to perform basic work activities. R. 14.  But the ALJ concluded at step three of the analysis that none of Jenkins' impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 14.

Before proceeding to the fourth step, the ALJ determined that Jenkins had the residual functional capacity ("RFC") to perform a limited range of light work. R. 15–19.  More specifically, the ALJ found that Jenkins had the following limitations with respect to light work, as defined in 20 C.F.R. § 404.1567(b):

> He could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  He could sit for six hours in an eight-hour workday and stand and/or walk for four hours in an eight-hour workday.  He could never crawl or climb ladders, ropes, or scaffolds, but could occasionally stoop, crouch, kneel, and push and pull with his lower extremities.  He was precluded from concentrated exposure to humidity and extreme cold, as well as jobs that require working with hazardous machinery,

---

[3] The ALJ found Jenkins' other alleged impairments to be non-severe. R. 14.  Jenkins does not challenge these findings.

working at unprotected heights, and around large, open bodies of water.

R. 15. At the fourth step, the ALJ considered Jenkins' age, education, work experience, and RFC in determining that he was unable to perform his past relevant work. R. 19. However, the ALJ determined that there were other jobs existing in the national economy that Jenkins could perform, including work as a small parts assembler, electronics worker, inspector/handpackager, and a shipping/receiving weigher. R. 20–21. Therefore, the ALJ concluded that Jenkins was not disabled within the meaning of the Social Security Act from May 1, 2016 through December 31, 2018, the date last insured. R. 21. Based on these findings, the ALJ denied Jenkins' application for benefits. R. 21.

## IV. DISCUSSION

Jenkins makes one argument in favor of remand: that the ALJ did not properly evaluate the credibility of his complaints of pain related to his neck, upper and lower back, and hip. Doc. 24 at 5–17. The Commissioner contends that substantial evidence supports the ALJ's subjective complaint analysis. Doc. 26 at 3–8.

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ

8

> discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *see also* 20 C.F.R. §§ 404.1529.  If a claimant satisfies the first part of the test, the ALJ must evaluate the symptoms' intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 20 C.F.R. §§ 416.929(c) & (d).  While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how his symptoms affect him. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).  The ALJ is not required to conduct an explicit symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that Jenkins' medically determinable impairments could

reasonably be expected to produce the alleged symptoms, but his statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and evidence of his daily activities. R. 16.  For the following reasons, the court concludes that the ALJ's reliance on Jenkins' daily activities is not support by substantial evidence.

The ALJ found that Jenkins' "admitted and indicated activities and abilities" were inconsistent with his claims of disabling pain. R. 17.  The ALJ listed these activities as including "performing personal care, preparing meals, performing household chores, driving, using his hands, and daily activities that include swimming, walking, cycling, lifting weights, and stretching." R. 17.  The exhibits the ALJ referenced in support of this statement, however, are medical records and do not reflect Jenkins' daily activities.  And during the hearing, Jenkins specifically denied that he cycles. R. 44.  Additionally, the court has been unable to find any evidence in the record that Jenkins swims, lifts weights, or stretches on a daily basis.

In the next paragraph of the opinion, the ALJ provides a different list of the "admitted and indicated activities and abilities that are inconsistent with the level of symptomology the claimant alleges." R. 17.  This list includes "performing household chores, shopping, and personal care, as well as daily activities that includes walking 25 minutes per day, exercising first thing every morning, and engaging in resistance training." R. 17.  This listing omits several limitations Jenkins

reported. For example, Jenkins reported he can wash dishes, clean the bathroom, and mow the lawn (R. 191), but limited the time period for washing dishes to 20 minutes and cleaning the bathroom to once a week for 10 to 15 minutes. R. 191. Additionally, Jenkins testified that he goes to the fitness center every morning and tries to walk for 20 to 25 minutes per day, not that he exercises first thing every morning or actually walks for that amount of time every day. R. 39. He also reported that he tries to do resistance training, not that he performs this activity on a daily basis. R. 39.

Although the ALJ did not rely solely on Jenkins' daily activities to conclude that his subjective complaints were inconsistent with the record, the ALJ overstated Jenkins' activity level and improperly dismissed the qualifying limitations Jenkins placed on many of his activities. The perceived inconsistencies between Jenkins' allegations of disability symptoms and his statements about his daily activities are not instructive because the ALJ did not accurately describe Jenkins' reported daily activities. *See Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006) ("[I]t is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. The ALJ's selective description of the plaintiff's activities is disingenuous, as he accepts her listing of her activities, but not her limiting description of them."); *Iheanacho v. Berryhill*, 2018 WL 4680173, at *8–9 (N.D. Ala. Sept. 28, 2018) (holding substantial evidence

did not support the ALJ's finding that the claimant's daily activities diminished her credibility where the ALJ's review of those activities was incomplete); *Bosarge v. Berryhill*, 2017 WL 1011671, at *7 n.6 (S.D. Ala. Mar. 15, 2017) (finding that the ALJ erred in "describ[ing] Plaintiff's daily activities in a manner which would lead the reader to believe that she performed them without any limitation").  Thus, the ALJ's reliance on Jenkins' daily activities is not supported by substantial evidence. The court will not reweigh the remaining evidence.  On remand, the ALJ should reconsider Jenkins' subjective complaints based on his reported daily activities, including the limitations he describes.

## V.  CONCLUSION

For this reason, the court concludes that the ALJ's determination that Jenkins is not disabled is not supported by substantial evidence.  The decision of the Commissioner is due to be reversed and remanded for further proceedings consistent with this Memorandum Opinion.  An appropriate order will be entered separately.

DONE and ORDERED on September 2, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE